OPINION OF THE COURT
Eileen N. Nadelson, J.
This action arises pursuant to the provisions of New York’s No-Fault Insurance Law.
The assignments of benefits that provide the basis of this claim present two discrete issues to be decided by this court. The alleged accident occurred on March 18, 2003, when the car driven by the son of the insured collided with another car. The assignors are the son and his passenger; the insured himself was not in the car nor involved in the accident. The insured’s policy covers accidents occurring while the son is driving the vehicle.
The claims for first-party benefits were submitted by plaintiff medical provider in a timely fashion. After the claims were submitted, defendant insurer requested additional verification in the form of an examination under oath (EUO) from the driver assignor. The request for the EUO was sent to the driver and the attorney representing the driver in a separate action. The address used to send the request to the driver was incorrect, and the request was never received by this assignor, although it was received by his attorney. It is noted that defendant did have the driver’s correct address, but left a significant portion of the address off the envelope. The driver assignor did not appear for the EUO. The subsequent follow-up request was also mailed to the same erroneous address, and the driver did not appear for the rescheduled EUO.
Meanwhile, defendant conducted EUOs of the passenger assignor and the insured. The passenger stated that she was picked up by the driver around 8:00 a.m., which was their usual custom, and that the accident occurred shortly thereafter. She further stated that she was removed from the vehicle by the fire department’s EMS team when they arrived on the scene. The police also were summoned.
The insured stated that he and the driver live at the same address and work at the same facility. He said that on the morn *787 ing in question he left for work at around 6:00 a.m., which was his customary practice. He further claimed that his son, according to his belief, usually leaves for work at 7:00 a.m., and arrives at work at around 7:30 a.m., but that he and his son do not work in the same area and he does not actually see his son arrive.
The insured said that he was called about the accident by the passenger, and arrived at the scene between 10:00 and 10:30 a.m., at which time he saw the passenger standing outside the car. He said he did not believe that she had been in the car.
The claims were ultimately denied by defendant insurer. The denial of benefits for the driver assignor’s treatment was dated August 8, 2003, the claim having been received on May 15, 2003; the denial of benefits for the passenger assignor’s treatment was dated August 20, 2003, the claim having been received on May 16, 2003.
Defendant stated that the denial of benefits for the driver assignor was based on his failing to attend scheduled examinations under oath, and the denial of benefits for the passenger assignor was based on defendant’s determination that the injuries complained of did not result from the alleged accident.
Plaintiff has moved for summary judgment, asserting that the denial of benefits for the driver assignor’s treatments was not received within the statutorily mandated 30 days after receipt of the claims (11 NYCRR 65-3.5, 65-3.8 [a]), and that the denial of benefits for the passenger assignor’s treatments is based on unsubstantiated hypotheses. Defendant maintains that its requests for verification of the claim tolled that statutory period pursuant to 11 NYCRR 65-3.5, and that the two conflicting EUOs of the passenger and the insured raise triable issues of fraud in presenting the claim.
The first issue required to be determined by this court is whether a request for an examination under oath to an injured party’s attorney is sufficient notification to the injured party under New York’s No-Fault Law and regulations? This is an issue of first impression under the regulations.
The regulations promulgated under New York’s No-Fault Law, appearing under part 65 of title 11 of the New York Code, Rules and Regulations, prescribe the manner in which requests for verification must be made. However, the regulations only deal specifically with time limits for making requests and scheduling EUOs; only tangentially do they indicate how notice is to be sent.
*788 11 NYCRR 65-3.5 (b) states that requests for verification “need not be made [in] any prescribed [manner] or . . . form.” Section 65-3.5 (e) states, in pertinent part, that the “insurer shall inform the applicant at the time the examination is scheduled that the applicant will be reimbursed for any loss of earnings and reasonable transportation expenses . . . .”
11 NYCRR 65-3.6 (b) states:
“[I]f any requested verifications [sic] has not been supplied to the insurer 30 calendar days after the original request, the insurer shall, within 10 calendar days, follow up with the party from whom the verification was requested ... At the same time the insurer shall inform the applicant and such person’s attorney of the reason(s) why the claim is delayed by identifying in writing the missing verification and the party from whom it was requested.” (Emphasis added.)
A legally valid basis for denying a first-party benefit claim would be the provider’s assignor failing to comply with requests for verification. (See generally, Lopedote v General Assur. Co., 4 Misc 3d 1001 [A], 2004 NY Slip Op 50593[U] [Kings County 2004].) However, the sine qua non of any legal request for information is that the party required to provide such information be given adequate and appropriate notice. (See generally, BHNJ Realty Corp. v Rivera, 144 Misc 2d 241 [NY County 1989].)
Neither the No-Fault Insurance Law nor the regulations promulgated thereunder specify the manner in which a request or notice be given. Therefore, in deciding whether notice to an assignor’s attorney, who is not representing the medical provider claimant, is sufficient notice to the assignor of the request for verification, the court must look to other statutes’ notice requirements to insure that the mandates of due process are met.
Section 308 (2) of the CPLR, concerning service of process, states that if a person is not personally served, service may be effectuated by serving a person of suitable age and discretion at the dwelling, place of business or abode of the person to be served and mailing a copy of the pleadings to that person’s last known address. Service may also be perfected by affixing a copy of the pleadings to the door of the dwelling of the person to be served and mailing a copy óf the pleadings to that address. These are dual requirements, and both serving the suitable person or affixing the papers and mailing the pleadings must be *789 completed before service is deemed satisfied. If the pleadings are mailed to the wrong address, service is deemed incomplete. (Schurr v Fillebrown, 146 AD2d 623 [2d Dept 1989].) Further, under section 312-a of the CPLR, personal service may be effectuated by mail, with proof of mailing and acknowledgment of receipt. However, in all instances, the mailing must be made to the person’s correct last known address. (See generally, Zaretski v Tutunjian, 133 AD2d 928 [3d Dept 1987]; Smith Carpet v Walter Arnold, Inc., 94 AD2d 643 [1st Dept 1983].)
Similarly, service under the provisions of Real Property Actions and Proceedings Law § 735 specifies a dual requirement of both serving a person of suitable age and discretion or affixing the pleadings to the door of the subject premises and mailing a copy of the pleadings to the person to be served. The failure to comply with these requirements, even when the person being served admits receipt, is deemed to be fatal. (Palumbo v Clark’s Estate, 94 Misc 2d 1 [Bronx County 1978].)
According to the provisions of the No-Fault Law, requests for additional verification must be made to the injured party or that party’s assignee. (11 NYCRR 65-3.5 [b]; Inwood Hill Med. P.C. v Allstate Ins. Co., 3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U] [NY County 2004].) In the instant case, it is undisputed that plaintiff, the assignee, did not receive the request for verification, and so the tolling of the 30-day period must stand or fall on the appropriateness of the request to the injured assignor.
The no-fault regulations consistently state that requests are to be made to the injured party or the claimant. In the case at bar, the claimant provider was not notified of the request for an EUO, and the request to the injured party was mailed to the wrong address. The only time the regulations mention an attorney is when it requires a request for additional verification to be sent both to the applicant and his attorney. The court views this notice requirement for an additional verification as a dual requirement, as with service under the CPLR and RPAPL, meaning that the failure to notify the claimant in a proper manner negates the effect of the request. Because the notices were never sent to the driver assignor’s correct address, the court finds that defendant failed to make a legally valid request for verification within the time period prescribed by the regulations, and therefore the 30-day requirement was not tolled and the denial was untimely.
The court emphasizes that the attorney who received the request represents the assignor in his own personal action for *790 damages, and does not represent the assignor with respect to plaintiff’s claim for first-party benefits. Therefore, since the representation involves separate claims and lawsuits, the court cannot assume that mailing requests to this lawyer is appropriate in this matter, since the assignor might retain different counsel for the claim under scrutiny. It has been held that mailing pleadings to a party’s attorney did not constitute valid service when there was no evidence that the party authorized the attorney to accept such pleadings. (Broman v Stern, 172 AD2d 475 [2d Dept 1991].)
The second issue to be decided by the court is whether a denial of first-party benefits under the No-Fault Law may be based on statements and suppositions made by a person who lacks personal knowledge of the situation.
Defendant denied the claim for the passenger’s treatments because of a discrepancy between the passenger’s statements under oath and the statements under oath of the insured. However, as the transcript clearly indicates, the insured had absolutely no personal knowledge of the facts, not having been on the scene when the driver started the vehicle nor at the scene of the alleged accident. His statements are conclusions he reached based on what he saw after the fact. The statements he made regarding what he viewed at the scene when he arrived are not inconsistent with the statements of the passenger.
Unsubstantiated hypotheses and suppositions are insufficient to raise a triable issue of an assignor’s fraud, and summary judgment should be granted if the medical provider evidences properly submitted claims. (A.B. Med. Servs. PLLC v Eagle Ins. Co., 3 Misc 3d 8 [App Term, 2d Dept 2003].) Defendant’s submission of the EUO of the insured who has no personal knowledge of the facts does not constitute evidentiary proof in admissible form. (S & M Supply, Inc. v State Farm Mut. Auto. Ins. Co., 4 Misc 3d 130[A], 2004 NY Slip Op 50693[U] [App Term, 2d Dept 2004].)
Based on the foregoing, the court grants plaintiffs motion for summary judgment.